IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

AMERICAN FIDELITY                                           PLAINTIFF
ASSURANCE COMPANY

V.                                              NO. 4:22-CV-39-DMB-JMV

ALISA ARCHIE, et al.                                        DEFENDANTS


## OPINION AND ORDER

Alisa Archie and Shalanda Archie Cook seek a default judgment that (1) they are entitled to the interpleaded funds on deposit with the Court, and (2) David Swims is liable to them for the wrongful death of Anteeatta Rachell Archie Swims. The default judgment sought is procedurally warranted. But because Alisa and Shalanda have not shown a sufficient basis in the pleadings for the default judgment and inadequately briefed the relevant issues, their motion for default judgment will be denied without prejudice.

**I**
**Procedural History**

On March 21, 2022, American Fidelity Assurance Company filed an interpleader complaint in the United States District Court for the Northern District of Mississippi to determine whether Alisa Archie, Shalanda Archie Cook, and David L. Swims, Jr. are the proper recipients of the "life insurance, disability, and annuity benefits under policies issued by [it] … on the life of Anteeatta Rachell Archie Swims." Doc. #1. After receiving an extension,[1] Alisa and Shalanda filed an answer and crossclaim against David for Anteeatta's wrongful death. Doc. #9. Though David was served with both the interpleader complaint and the crossclaim, he has failed to appear

---

[1] Doc. #8.

in this action.  *See* Docs. #4, #24.

On June 1, 2022, on American Fidelity's motion,[2] United States Magistrate Judge Jane M. Virden authorized American Fidelity to deposit with the Court $104,518.85, plus interest, as proceeds of the policies.  Doc. #13.  American Fidelity subsequently deposited $104,526.81.  It then obtained its dismissal as a disinterested stakeholder and was awarded $4,288 for fees and costs (to be paid out of the money deposited with the Court) based on an agreement between it, Alisa, and Shalanda.  Doc. #31.

At Alisa and Shalanda's request,[3] the Clerk of Court entered default against David on July 28, 2022, with respect to their wrongful death crossclaim against him.  Doc. #27.  Approximately seven weeks later, on September 29, 2022, Alisa and Shalanda filed a "Motion to Disburse Interplead Funds."  Doc. #29.  But because the motion "essentially request[ed] a default judgment against [David] without mention of the relevant rule, the procedural requirements to obtain a default judgment, or the factors to be considered in determining whether default is warranted," the Court denied the motion without prejudice on December 6, 2022.  Doc. #32.

On December 12, 2022, Alisa and Shalanda moved for an entry of default against David based on his "failure to plead or otherwise defend against American Fidelity['s] Complaint."  Doc. #33.  Two days later, the Clerk entered default against David.  Doc. #34.  Over two months later, on February 21, 2023, Alisa and Shalanda filed a motion "for the entry of a Default Judgment against … David … in the amount of $100,298.81 in liquidated damages" and requested "a hearing on the matter for a determination of unliquidated damages."[4]  Doc. #35.  No response was filed.

---

[2] Doc. #12.

[3] Doc. #26.

[4] Although unclear, the motion seems to seek a default judgment against David as to any claims to the interpleaded funds as well as a default judgment on the crossclaim.

## II
## Analysis

The United States Court of Appeals for the Fifth Circuit has adopted a three-step process to obtain a default judgment. First, a default occurs when a party has failed to plead or otherwise defend against an action. Next, an entry of default must be entered by the clerk when the default is shown by affidavit or otherwise. Third, a party may apply to the court for a default judgment after an entry of default.

*EW Polymer Gr., LLC v. GSX Int'l Gr., Inc.*, __ F. Supp. 3d __, 2022 WL 3453518, at \*2 (M.D. La. Aug. 17, 2022) (cleaned up) (citing Fed. R. Civ. P. 55 and *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)).

The first two steps have been satisfied here. The only issue remaining is to consider whether default judgment should be entered. In making this determination, the Court conducts a three-question analysis: (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015).

### A. Procedural Justification

In determining whether a default judgment is procedurally warranted, a court should consider (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial prejudice;" (3) "whether the grounds for default are clearly established;" (4) "whether the default was caused by a good faith mistake or excusable neglect;" (5) "the harshness of a default judgment;" and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, where, as here, a party fails to respond to or answer the complaint, there are no material issues of fact at issue. *See Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 753 (N.D. Tex. 2020) ("[B]ecause Eltman has not filed any responsive pleading, there are no material facts

3

in dispute."). Second, David's failure to respond causes prejudice to Alisa and Shalanda because it "threatens to bring the adversary process to a halt, effectively prejudicing [their] interests." *Id.* (citations omitted). Third, as mentioned above, the grounds for default (default and entry of default) are clearly established. Fourth, there is no evidence before the Court that the "default was caused by a good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, David has not attempted to set aside the default as to the counterclaim in the over seven months since it was entered (nor has he attempted to set aside the default as to American Fidelity's complaint in the approximately three months since it was entered). "[W]hile default judgment is a harsh remedy, any harshness is mitigated [when a defendant has] had substantial time to correct the default." *Helena Chem. Co. v. Aylward*, No. 4:15-cv-96, 2016 WL 1611121, at *2 (N.D. Miss. Apr. 21, 2016); *see EW Polymer*, 2022 WL 3453518 at *3 ("Defendant's failure to file a responsive pleading or otherwise defend the lawsuit mitigates the harshness of a default judgment."). Finally, if David later seeks to challenge the default, the Court is unaware of any facts that would make it "obliged to set aside the default." *Lindsey*, 161 F.3d at 893.

Considering these factors, the Court finds they all weigh in favor of a default judgment being procedurally warranted in this case.

**B. Sufficient Basis in Pleadings**

"Even when a defendant is in default, a plaintiff is not 'entitled to a default judgment as a matter of right.'" *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022) (citation omitted). "[A] court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." *Id.* at 493. Thus, the factual allegations in the complaint must "be enough to raise a right to relief above the speculative level." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 548 (2007)). In

conducting this analysis, "the district court takes as true the facts asserted by a plaintiff against a defaulting defendant" because "[t]he defendant, by his default, admits the plaintiff's wellpleaded allegations of fact." *Escalante*, 34 F.4th at 492 (citation omitted).

### 1. Factual allegations

Anteeatta Rachell Archie Swims "was insured under three policies of insurance issued by American Fidelity." Doc. #1 at 2. Anteeatta "purchased a Renewable and Convertible Term Life Insurance Policy, Policy # 925448705 (the 'Life Policy') … insuring her life for $150,000.00." *Id.* Anteeatta's husband, David Swims, and sister, Shalanda Cook, were each designated as beneficiaries of fifty percent of the Life Policy. *Id.* Anteeatta also "was insured under Group Disability Income Insurance Certificate # 925448701 (the 'Disability Policy')," which "include[d] an accidental death benefit." *Id.* at 2–3. The designated beneficiaries under the Disability Policy were David (50%), Shalanda (30%), and Anteeatta's mother, Alisa Archie (20%). *Id.* at 3. Anteeatta also "was the owner and annuitant under a Flexible Premium Deferred Annuity Contract, Policy # 925448703 (the 'Annuity'), which includes payment of benefits upon the death of the annuitant." *Id.* at 3. David was the sole designated beneficiary of the Annuity. *Id.*

Anteeatta "died on June 11, 2021 as the result of a homicide" following David's "intentional discharge of his firearm." *Id.*; Doc. #9 at PageID 158; Doc. #1-5 (death certificate indicating Anteeatta's cause of death as a homicide due to "multiple gunshot wounds"). After Anteeatta's death, American Fidelity paid benefits to Shalanda under the Life Policy and to both Shalanda and Alisa under the Disability Policy based on their designations as beneficiaries under those policies. Doc. #1 at 3.

"On or about September 9, 2021, … David … was indicted for First Degree Murder for the death of [Anteeatta]." *Id.* at 4; Doc. #1-8. David "is presently awaiting trial on the murder charge."

5

Doc. #1 at 4.

## 2. Claims

Shalanda and Alisa assert they "are entitled to the total benefits of [Anteeatta's] three insurance policies in question" because David "is not entitled to receive any portion of any of the three insurance policies' benefits, pursuant to the insurance policies' respective murder clauses and the State of Mississippi's applicable slayer statutes." Doc. #9 at PageID 158. They also assert David's actions caused them "to experience loss of society and companionship, emotional distress, mental anguish, and economic damages related to [Anteeatta's] death, including funeral expenses," and seek "actual and punitive damages" from David for Anteeatta's wrongful death. *Id.*

Mississippi Code § 91-1-25 provides that "[i]f any person willfully cause or procure the death of another in any way, he shall not inherit the property, real or personal, of such other; but the same shall descend as if the person so causing or procuring the death had predeceased the person whose death he perpetrated." "[T]he Mississippi Supreme Court has applied the same statutory principles where the property at issue was life insurance proceeds rather than an inheritance." *Hicks v. Pub. Emps.' Ret. Sys. of Miss.*, 282 So. 3d 1204, 1208 (Miss. Ct. App. 2019) (collecting cases).

Here, because David is deemed to have admitted the facts of the complaint and the crossclaim,[5] the allegation that he shot and killed Anteeatta is sufficient to show he cannot receive the benefits of the various policies. However, such does not necessarily mean that Shalanda and Alisa are entitled to the portions of the proceeds designated for David. The relevant statute provides such funds should descend as if David predeceased Anteeatta but Shalanda and Alisa do

---

[5] *Escalante*, 34 F.4th at 492.

not present any argument (or evidence) to support the conclusion that such distribution means they are entitled to the funds. *See* Miss. Code Ann. § 91-1-25. Specifically, among other things, they do not allege any facts or present any proof indicating that Anteeatta died (1) with a will which provides for their entitlement to the funds, or (2) without a will and had no children who would inherit before either of them (her mother or sister).[6] They also have failed to point to a provision in the subject policies addressing the distribution of funds when a beneficiary predeceases the insured much less one requiring one beneficiary's share to be distributed to one or more other beneficiaries. Under these circumstances, Shalanda and Alisa have not shown by more than speculation that they are entitled to David's portions of the funds and thus are not entitled to default judgment with respect to such funds. *Wooten*, 788 F.3d at 498.

As for the wrongful death claim, while Alisa and Shalanda assert that they "are the mother and sister" of Anteeatta and "have incurred certain unliquidated damages,"[7] they fail to cite any authority or provide any argument why such entitles them to relief against David. *See Gurung v. Holder*, 587 F. App'x 834, 837 (5th Cir. 2014) ("Briefs are inadequate if they fail to cite any relevant case law … and fail to apply the proper test for the disputed issues."). Because they have not adequately briefed those issues, the motion for default judgment on such claims, as well as their request for a hearing on unliquidated damages, will be denied.

### III
### Conclusion

Alisa and Shalanda's motion for default judgment [35] is **DENIED without prejudice**.

**SO ORDERED**, this 4th day of April, 2023.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[6] *See* Miss. Code Ann. § 91-1-7 ("If a married woman die owning any real or personal estate not disposed of, it shall descend to … her children or their descendants if she have any surviving heir.").

[7] Doc. #36 at PageID 239.